**BRESLER'S 33 FLAVORS FRANCHISING CORP., an Illinois Corporation, Plaintiff,**

v.

**Donald WOKOSIN and Donna Wokosin, Defendants.**

**Civ. A. No. 83–C–380.**

United States District Court, E.D. Wisconsin.

Aug. 17, 1984.

---

Andrew O. Riteris and Toni L. Bonney, Michael, Best & Friedrich, Milwaukee, Wis., for plaintiff; Michael, Best & Friedrich, Milwaukee, Wis., and Diane Fields Geocaris and Reuben A. Bernick, Rudnick & Wolfe, Chicago, Ill., of counsel.

Alan H. Deutch and Eugene E. Detert, Deutch, Hansher & Grodsky, S.C., Milwaukee, Wis., for defendants.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action for a declaratory judgment under 28 U.S.C. § 2201. Federal jurisdiction is conferred by 28 U.S.C. § 1332.

The plaintiff Bresler's 33 Flavors Franchising Corp. ("Bresler's") is an Illinois corporation engaged in the business of franchising ice cream retail shops at leased locations. Bresler's sells hand packed and dipped ice cream and soda fountain products at these shops. The defendants Donald Wokosin and Donna Wokosin ("the Wokosins") are Wisconsin residents who operate a Bresler's 33 Flavors Ice Cream Shop in Oshkosh, Wisconsin. In this action, Bresler's requests an order providing that the Wokosins' option to continue their franchise is limited to the terms of a new franchise agreement. Presently before the Court is Bresler's motion for summary judgment. The motion is granted.

The facts relevant to the present motion are as follows. On December 1, 1977, the Wokosins entered into a franchise agreement ("the '77 agreement") with Ice Cream, Ltd., Bresler's predecessor in interest. Under this agreement, the Wokosins and Ice Cream, Ltd., would, *inter alia,* each contribute two cents per gallon of ice cream that the Wokosins purchased to an advertising fund for promoting their business. In addition, the Wokosins would pay Ice Cream, Ltd., a franchise royalty, which in 1983 would total approximately 5 per cent of their gross sales. The '77 agree-

ment specifically prohibited the Wokosins from using products or materials that did not have Ice Cream, Ltd.'s approval. The price the Wokosins would pay for ice cream was subject to change whenever there was a change in the cost to Ice Cream, Ltd., of products sold to the Wokosins or in the cost of operating Ice Cream, Ltd.'s business. The Wokosins' franchise could be terminated if they failed on two or more occasions to submit reports, make necessary payments, or otherwise comply with the '77 agreement. There was no limit on the length of time that could pass between the two instances of noncompliance. The Wokosins had no right to terminate the '77 agreement. The '77 agreement contained a covenant not to compete, which applied regardless of Ice Cream, Ltd.'s reason for terminating the franchise. Finally, with respect to renewal, subsection D(4) of the '77 agreement provided:

> In the event OWNER is able to obtain an extension or renewal of his lease on the premises in which he operates his Bresler's 33 Flavors Ice Cream Shop to a date beyond the term of the license granted by this Agreement and so long as OWNER shall at such time not be in substantial default of any of his obligations hereunder, OWNER shall have the option to enter into a new agreement with LICENSOR, *in the form then being used by LICENSOR*, for a term to coincide with the term of such renewal or extension. (Emphasis added.)

The '77 agreement expired by its own terms on January 30, 1983, but gave the Wokosins an option to renew *"in the form then being used by LICENSOR,"* provided that they were able to obtain an extension or renewal of the lease of their business premises and were not in default of their obligations under the '77 agreement.

The '77 agreement did not include an arrangement whereby the Wokosins would lease the premises from Ice Cream, Ltd. Instead, the Wokosins took by an assignment dated December 1, 1977, a sublease from Little Bill 33 Flavors Stores of Wisconsin, Incorporated.[1] The sublease granted the Wokosins the right to occupy a store in the Park Plaza Shopping Mall in Oshkosh, Wisconsin, for the purpose of operating a Bresler's 33 Flavors Ice Cream Shop.

At the time the parties entered into the '77 agreement, the renewal provision therein was unique in the context of Bresler's existing Wisconsin operations. For example, three pre-1972 agreements between Bresler's predecessor and other franchisees each provided that the grant of the franchise would last for as long as the franchisee enjoyed a valid lease on its business premises. An agreement dated June 25, 1973, between Bresler's predecessor and another franchisee provided that the grant would expire after fifteen years. A fifth agreement, dated March 1, 1975, provided that the grant would last for two years and ten months, and would be extended upon the franchisee's obtaining an extension of the lease on the business premises. None of these agreements provided that extension or renewal of the agreement would be contingent on the parties' acceptance of the terms of the form of agreement or that the extension or renewal of the agreement would be contingent on the parties' acceptance of the terms of the form of agreement then being used by the franchisor.

In June 1981, Bresler's acquired all the interests, rights, and obligations of Ice Cream, Ltd. On January 29, 1983, Bresler's requested that the Wokosins enter a new franchise agreement then being used by Bresler's ("the '83 agreement") and the Wokosins refused to do so. The '83 agreement requires Bresler's to contribute to the advertising fund 1 per cent of the dollar amount of the Wokosins' purchases of ice cream, and the Wokosins to contribute a varying percentage of the dollar amount of their wholesale purchases of ice cream. With respect to the franchise royalty, the '83 agreement required the Wokosins to pay the greater of 6 per cent of their

---

1. The specific nature of the legal relationship between Bresler's and Little Bill 33 Flavors Stores of Wisconsin is not before the Court.

gross sales or 21 per cent of the wholesale price of the ice cream they purchase. The '83 agreement permitted the Wokosins to use nonapproved products and materials under limited circumstances. The price the Wokosins would pay for ice cream products changes only when the price Bresler's pays for these products changes. With respect to termination, the Wokosins' franchise can be terminated only if two instances of non-compliance occur within a twelve-month period. The '83 agreement permits the Wokosins to terminate the franchise for cause, but if they so terminate, the covenant not to compete does not apply. The '83 agreement is a form of agreement that Bresler's now uses in granting new franchises.

Both the '77 and the '83 agreements require the Wokosins to improve and equip, and place necessary fixtures in, their premises according to Bresler's standard specifications. Some time before this action was filed, Bresler's requested the Wokosins to remodel their premises pursuant to this provision.[2] The remodeling will cost approximately $6,000 per year for five years.

Concurrent with the remodeling requirement, the Wokosins face increases in their monthly rent and utility expenses. They estimate an increase of $3,000 per year with respect to these two items.

In 1982, the Wokosins enjoyed gross sales of $86,370 and a net profit of $13,528. Their advertising contribution under the '77 agreement was $115.90, and their franchise fee was $3,306. Assuming that the Wokosins would enjoy the same amount of business under the new agreement, their advertising contribution would increase to $1,985.62, an increase of $1,869.72, and their franchise fee would increase to $5,182.20, an increase of $1,876.20.

The Wokosins have declined to enter the '83 agreement, and contend that to require them to do so would place their business in a state of pecuniary embarrassment. They add the prospective advertising and franchise fee increases of $1,869.72 and $1,876.20 to the prospective yearly remodeling cost of $6,000 and rent and utility increase of $3,000, and arrive at a total increase of $12,745.92 in the cost of operating their store. This increase would consume nearly all of the prospective net profit of $13,528, leaving a mere $782.08. The Wokosins argue that the conditions imposed by the '83 agreement would work a substantial change in the competitive circumstances of their franchise, and that the Wisconsin Fair Dealership Law permits them to continue operating under the old agreement. Additionally, they argue that the proposed remodeling is utterly unnecessary because their premises are presently in good condition.

Bresler's argues that the Fair Dealership Law does not apply because its action does not amount to a termination of, or a failure to renew, the Wokosins' franchise, nor has it endeavored to change substantially the competitive circumstances of the franchise. Bresler's argues that no genuine issue of material fact exists, and that it is entitled to judgment as a matter of law.

■ The alleged increases in rent and utility expenses are irrelevant to the legal issues in this action. These increases are being imposed by entities not within Bresler's control and not named as parties to this suit, and there is nothing in the '83 agreement mandating an increase in rental or utility payments. These increases may well bring hardship upon the Wokosins if they are imposed concurrently with the obligations under the '83 agreement, but the

**2.** With respect to the remodeling, the record is far from lucid. The Wokosins, in opposition to the present motion, vehemently assert that the new agreement requires them to remodel their premises. In reply, counsel for Bresler's states that there is no provision in the new agreement expressly directing the Wokosins to remodel. However, in an answer to defendants' first set of interrogatories, Bresler's concedes that the new agreement requires the Wokosins to re-

model, but also states that the old agreement imposes the same requirement. My review of both agreements leads me to conclude that the interrogatory response reflects the reality of the situation. The agreements direct the franchisee to remodel at the grantor's request. Apparently, then, the Wokosins have been directed to remodel pursuant to one or the other provision, although the document directing them to remodel is not on file with the court.

fact remains that Bresler's has not caused them.

The merits of the parties' contentions rest on the applicability of the Wisconsin Fair Dealership Law, Wis.Stat. § 135.03 (1981), which provides in pertinent part:

> No grantor, directly or through any officer, agent or employe, may terminate, cancel, fail to renew or substantially change the competitive circumstances of a dealership agreement without good cause. The burden of proving good cause is on the grantor.

Good cause, in turn, is defined by Wis.Stat. § 135.02(6) (1981):

> (a) Failure by a dealer to comply substantially with essential and reasonable requirements imposed upon him by the grantor, or sought to be imposed by the grantor, *which requirements are not discriminatory as compared with requirements imposed on other similarly situated dealers either by their terms or in the manner of their enforcement;* or
>
> (b) Bad faith by the dealer in carrying out the terms of the dealership. (Emphasis added.)

The Wokosins argue that Bresler's must show good cause before it can condition renewal of the franchise upon the Wokosins' acceptance of the new agreement. Bresler's argues that the issue of good cause does not arise because it is the Wokosins who have failed to renew the franchise which is similar to that offered to other franchisees in Wisconsin, and because there is in any event no substantial change in the Wokosins' competitive circumstances.

To date, there is a paucity of case law interpreting § 135.03. Most of the cases under the Wisconsin Fair Dealership Law discuss the law's constitutionality or the definition of dealership, or the law's notice provisions. The Wisconsin legislature has provided that the Fair Dealership Law "shall be liberally construed and applied to promote its underlying remedial purposes and policies." Wis.Stat. § 135.025(1) (1981). The purposes of the law include the continuation of dealerships on a fair,

nondiscriminatory basis, and the protection of dealers against unfair treatment by grantors who possess superior bargaining power in negotiating dealerships. Wis. Stat. § 135.025(2)(a), (b) (1981).

■ In the context of this case, § 135.03 and 135.02(6) read together require the Court to determine first whether there has been a "termination, cancellation or failure to renew" (which there has not been) on the part of the grantor; then second, whether the grantor has "substantially changed the competitive circumstances of the dealership," and if the grantor has, then third, whether the grantor had "good cause" to change the competitive circumstance.

■ In regard to the question of "termination, cancellation or failure to renew," the dispute is over the terms and conditions of the renewal of the franchise agreement. The Wokosins assert that Bresler's has refused to permit them to continue to operate under the terms of the '77 agreement. The '77 agreement expressly provided for renewal "in the form [of agreement] then being used" by Bresler's. Bresler's relies on this provision and has offered to renew the franchise agreement on the terms presently being used, but the Wokosins will not renew on those terms.

■ The 1983 agreement does not contain provisions that would substantially change the dealer's competitive circumstances. There may be circumstances in which new obligations to be imposed as preconditions to renewal have a *de minimus* effect on the dealer's business or would increase the dealer's business, while in other circumstances new obligations could work changes so severe as to threaten the dealership's viability.

While the '83 agreement's provisions for remodeling, advertising, and the franchise fee are different from their counterparts in the '77 agreement, the Wokosins have failed to demonstrate that the competitive circumstances of their dealership will be substantially changed. Their argument that their profits will be drastically reduced relies on the assumption that their volume

of sales will not increase with the advent of new decorations and advertising. There is no basis in the record for this assumption. An increase in costs does not necessarily entail a decrease in profits. This is particularly germane to the proposed remodeling and advertising obligations. Presumably, these changes were instituted in order to attract more consumers to the Bresler's franchise outlets. Assuming that these operations enjoy economies of scale, the new requirements could allow the franchisee to expand output to a more efficient level of production. There is nothing in the record persuasively to indicate why that could not occur here.

Moreover, there is nothing in the record to indicate why at least some of the cost increases could not. be passed on to consumers. The Wokosins have submitted no information on whether they are able to establish their own retail prices and whether there are any other ice cream retailers who would underprice them if their prices were high enough. In sum, the Wokosin's have failed to establish that their franchisee's competitive circumstances will be substantially changed in a detrimental way.

The Court recognizes that much of the information necessary to that determination would be quite complex and not easily susceptible of proof, and that the burden of proof placed on dealers in this context is quite demanding. The fact remains, however, that American businesses compete in a free market economy, and laws regulating trade must be interpreted in a manner consistent with free market economic principles. The Wisconsin Fair Dealership Law reflects a legislative recognition that a grantor's superior bargaining power may subject a dealer to abusive practices and injury, and offers the dealer an opportunity to invoke the powers of the state against the grantor. Yet if the state is to intrude in the workings of the economy, the party seeking this form of relief must carry his burden of proof. Here the defendants are being treated the same as all similarly situated Bresler's franchisees.

IT IS THEREFORE ORDERED that the plaintiff's motion for summary judgment is granted.